UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT FOR NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
JULIA LIU,

                 Plaintiff,

    - against -

RAJ RAJARATNAM; GALLEON MANAGEMENT
L.P.; GALLEON MANAGEMENT, L.L.C.; and
GALLEON ADVISORS, L.L.C.,

                 Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

06 Civ. 15277 (DAB)

COMPLAINT
ECF CASE

PLAINTIFF DEMANDS
A TRIAL BY JURY

Plaintiff Julia Liu ("plaintiff" or "Liu"), by her attorneys, Beranbaum Menken Ben-Asher & Bierman LLP, complaining of defendants Raj Rajaratnam ("Rajaratnam"); Galleon Management, L.P.; Galleon Management, L.L.C.; and Galleon Advisors, L.L.C., (hereinafter the latter three defendants are referred to collectively as "Galleon" and all defendants are collectively referred to as "defendants"), alleges:

## NATURE OF ACTION

1. This action is brought to remedy claims of breach of contract for defendants' failure to pay Liu a guaranteed payment of one year's compensation and for employment discrimination on the basis of sex, pursuant to New York Labor Law §§ 193 and 198, the New York State Human Rights Law, Executive Law §§ 290 et seq. (the "Human Rights Law"), and the Administrative Code of the City of New York §§ 8-101 et seq. (the "Administrative Code").

2. Plaintiff seeks injunctive and declaratory relief, compensatory, liquidated and punitive damages, and other appropriate legal and equitable relief.

## JURISDICTION AND VENUE

3. Jurisdiction of this Court is invoked by virtue of the parties' diversity of citizenship jurisdiction under 28 U.S.C. § 1332.

4. A copy of this Complaint is timely being served upon the New York City Corporation Counsel and the Commission on Human Rights of the City of New York.

5. Venue is proper in the Southern District for New York, pursuant to 28 U.S.C. § 1391(a), because a substantial part of the events giving rise to the claims occurred within this district.

## PARTIES

6. Liu is a female, residing in the State of New Jersey. She worked for defendants from 1998 until 2003.

7. Rajaratnam is a citizen of the State of New York. He is the managing member of Galleon Management, L.L.C., and Galleon Advisors, L.L.C., and the principal partner of Galleon Management L.P. He controls each entity.

8. Galleon Management, L.P. is a Delaware limited partnership whose principal place of business is in New York, New York. It is the investment advisor for large hedge funds.

9. Galleon Management, L.L.C. is a Delaware limited liability corporation whose principal place of business is in New York, New York. It is the investment advisor for large hedge funds. Galleon Management, L.L.C. is the general manager of Galleon Management, L.P.

10. Galleon Advisors, L.L.C. is a Delaware limited liability corporation whose principal place of business is in New York, New York. It is the investment

2

advisor for large hedge funds.

11. Each defendant is an "employer" within the meaning of New York Labor Law § 2, the Human Rights Law § 292(5) and the Administrative Code § 8-102(5).

## FACTUAL ALLEGATIONS

### (a) **Failure to pay guaranteed compensation**

12. Pursuant to an offer letter from Rajaratnam, dated December 14, 2005 (the "offer letter"), Liu was hired as Managing Director and Head of Galleon's Global Markets Group. The offer letter provided that "in no event will you be paid less than the guaranteed amount of $1.75 million for the 2006 year unless your employment is terminated for violating the law or the Galleon policies as outlined in the Galleon handbook."

13. The offer letter also provided that Liu would be responsible for recruiting a team of four to six professionals and that Liu's team would be provided with an initial capital of $250 million.

14. Liu began working for Galleon on February 15, 2006. Consistent with the offer letter she hired five analysts. In the beginning of May 2006, Galleon wired her only $100 million capital for her team to invest, in breach of the offer letter's commitment to provide Liu's team initial capital of $250 million.

15. Liu's team performed well despite a sharp downturn during that period in the emerging markets area. During the period May 8, 2006, when Liu's group began investing, until August 21, 2006, the day of her termination, her group significantly outperformed her asset class. During that period, the Morgan Stanley

Emerging Markets ("MSEM") Value Index lost 12.6% and the MSEM Growth Index lost 10.67%, while Liu's group was down just 3%, and was poised to become profitable as market conditions improved.

16. In June 2006, in the midst of the emerging markets meltdown, Rajaratnam complimented Liu at her group's weekly meeting with senior management, telling her that her performance was "good" and constituted a "job well done."

17. During her half-year at the firm, Liu successfully expanded business relationships with brokerage house. She established for Galleon global equity research sales and equity sales trading coverage with nine major brokerage houses in regions throughout the globe; she set up ISDAs **[need full name]** with seven major brokerage firms; she set up equity sales coverage with nine boutique brokerage firms; and she arranged for fixed income sales coverage with 14 brokerage firms and foreign exchange trading coverage with three brokerage firms.

18. On information and belief, in the morning of August 21, 2006, Rajaratnam met with members of Liu's team, and they complained that Liu was an overly demanding manager.

19. Later that same morning, Rajaratnam, without any warning and without giving Liu a chance to rebut her subordinates' allegations, summarily fired Liu.

21. In a letter hand delivered to Liu that same day, August 21, 2006, Rajaratnam told Liu that he was firing her effective immediately because, based on "material new information" he received that morning, he decided that her "overall conduct and performance run contrary to the best interests of Galleon and require this immediate action. Under these regrettable circumstances, the Firm has no obligation to

4

make further compensation payments to you."

22. Before firing Liu, defendants never gave her any warning or notice about alleged problems in her management style or that her job was in jeopardy.

23. Upon being fired, Liu was owed her guaranteed annual compensation of $1,750,000 minus the $100,000 in salary that she had received, or a total of $1,650,000.

24. Rajaratnam refused to pay Liu her guaranteed compensation of $1,650,000 because her emerging markets fund had suffered losses. Rajaratnam told Liu, "I would be crazy and have to have my head examined to then pay you the 1.65 million guarantee with those losses [$3 million of his personal money and another $1.5 million in expenses]. You don't deserve it."

25. Under the terms of the offer letter, Liu's alleged poor performance did not excuse Galleon from paying the guaranteed compensation, and therefore the fact that Liu's funds (during a down market) lost money was not a legitimate basis for the forfeiture of her guaranteed compensation.

26. Pursuant to the offer letter, the only grounds for excusing Galleon from paying Liu the guaranteed payment was if she had violated the law or Galleon policies outlined in its handbook. Because Liu neither violated the law nor Galleon policies outlined in its handbook, Galleon breach the offer letter when it withheld Liu's guaranteed compensation.

27. Defendants' refusal to pay Liu her guaranteed compensation represented an unauthorized deductions from an employee's wages, in violation of N.Y. Labor Law § 193.

28. Defendants' refusal to pay Liu her guaranteed compensation was willful.

### (b) Sex Discrimination

29. At the time of her termination, Liu, 44 years old, was five months pregnant and her pregnancy was visibly showing.

30. The members of Liu's team all knew she was pregnant.

31. The members of Liu's team were all male, and, on information and belief, did not accept Liu's hard-charging management style because she was a woman.

32. On information and belief, Rajaratnam knew that Liu was pregnant. Alternatively, in deciding to fire Liu, Rajaratnam relied on information provided him by the male team members who were biased against Liu because she was a woman.

33. Defendants never gave Liu any warnings about her allegedly overly demanding management style or an opportunity to correct the management style. Specifically, a Galleon executive who met with Liu and her team every week, never told her that her management style was unacceptable.

34. To the extent that Rajaratnam fired Liu because of the complaints made about her by her team (and not because her funds had lost money), defendants were engaging in a sexist double standard. Defendants allowed males at Galleon to scream and curse in the workplace, and permitted the highest level senior management to make unwelcome, offensive comments to a female subordinate about disturbing sexual acts. On information and belief, the males engaging in such misconduct were never disciplined, fired or had their guaranteed compensation forfeited.

6

35. Defendants also engaged in a double standard when, on information and belief, it condoned male traders and executives' practice of routinely engaging in sham short positions, in violation of United States Securities and Exchange Commission Rule 105 of Regulation M.  As a result of the male traders' and executives' unlawful actions, the SEC brought a civil penalty action against Galleon Management L.P., in response to which, Galleon entered into a cease and desist with government and agreed to pay a $870,247 civil penalty.  On information and belief, defendants did not fire or forfeit the guaranteed compensation of the males traders and executives responsible for the illegal conduct.

36. On information and belief, Rajaratnam's concerns about Liu's Global Markets Group's year-to-date losses were exacerbated by the knowledge that she was pregnant and would need time off for the birth and care of her child.

37. In motivating part, Rajaratnam fired Liu because she was a woman and pregnant.

## FIRST CAUSE OF ACTION: N.Y. LABOR LAW

38. Plaintiff repeats and realleges each and every allegation contained in paragraphs one through 37 of this Complaint with the same force and effect as if set forth herein.

39. In violation of N.Y. Labor §§ 193 and 198, defendants made an unauthorized deduction from Liu's wages by refusing to pay her the contractually mandated guaranteed compensation.

40. In withholding Liu's earned compensation, defendants acted wilfully.

## SECOND CAUSE OF ACTION: BREACH OF CONTRACT

41. Plaintiff repeats and realleges each and every allegation contained in paragraphs one through 37 of this Complaint with the same force and effect as if set forth herein.

42. The offer letter was a binding contract entered into between Liu and defendants.

43. Defendants breached the offer letter when it failed to pay Liu her guaranteed compensation of $1,650,000.

44. Defendants breached the offer letter when it failed to provide Liu's team with initial capital of $250 million.

45. Plaintiff is entitled to compensatory damages for defendants' breach of the contractually binding offer letter.

## THIRD CAUSE OF ACTION: HUMAN RIGHTS LAW

46. Plaintiff repeats and realleges each and every allegation contained in paragraphs one through 37 of this Complaint with the same force and effect as if set forth herein.

47. In violation of the Human Rights Law, defendant discriminated against plaintiff in the terms and conditions of her employment on the basis of her sex.

48. Plaintiff has suffered and continues to suffer mental anguish, emotional distress, and other compensable injuries as a result of defendants' actions.

## FOURTH CAUSE OF ACTION: ADMINISTRATIVE CODE

49. Plaintiff repeats and realleges each and every allegation contained in paragraphs one through 37 of this Complaint with the same force and effect as if set forth herein.

50. In violation of the Administrative Code, defendant discriminated against plaintiff in the terms and conditions of her employment on the basis of her sex.

51. In taking the above described discriminatory actions, defendant acted with malice and reckless indifference to plaintiff's rights under the Administrative Code.

52. Plaintiff has suffered and continues to suffer mental anguish, emotional distress, and other compensable injuries as a result of defendant's actions.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court enter a judgment:

a. Declaring that the acts and practices complained of herein are in violation of N.Y. Labor Law VII, the Human Rights Law, and the Administrative Code;

b. Enjoining and permanently restraining these violations of law;

c. Directing defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

d. Directing defendant to place plaintiff in the position she would have occupied but for defendants' unlawful conduct, and making her whole for all earnings and other benefits she would have received but for defendants' unlawful conduct, including but not limited to wages, compensation, other lost benefits, and interest thereon;

e. Directing defendant to pay plaintiff compensatory damages, including damages for her mental anguish, pain and suffering and humiliation;

f. Awarding plaintiff the costs of this action together with reasonable attorney's fees;

      g. Directing defendants to pay punitive damages;

      h. Directing defendants to pay punitive damages; and

      h. Granting such other and further relief as this Court deems necessary and proper.

### DEMAND FOR A TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff hereby demands a trial by jury.

Dated:  New York, New York
         December 19, 2006

                          BERANBAUM MENKEN
                          BEN-ASHER & BIERMAN LLP

By: _____
John A. Beranbaum (JB-7944)
Attorneys for Plaintiff
80 Pine Street, 32nd floor
New York, NY 10004
(212) 509-1616